Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Amplify Energy Corp., Beta Operating Company, LLC,*
*and San Pedro Bay Pipeline Company*

*Additional counsel appear on signature page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| EAST MEETS WEST EXCURSIONS, et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>AMPLIFY ENERGY CORP.; et al.,<br><br>    Defendants. | Case No. 8:21-cv-1725-DOC-JDEx<br><br>**JOINT RULE 26(F) REPORT**<br><br>Judge: Hon. David O. Carter<br>Date: December 15, 2021<br>Time: 9:00 a.m.<br>Courtroom: 9D |

JOINT RULE 26(f) REPORT

Pursuant to the Court's Order re: Initial Scheduling Conference (8:21-cv-1725, Dkt. 20), Rule 26 of the Federal Rules of Civil Procedure, and Civil Local Rule 26-1, counsel for Plaintiffs and counsel for Defendants have met and conferred by telephonic and e-mail conferences and hereby submit this Joint Rule 26(f) Report in advance of the December 15, 2021 Scheduling Conference in this action.[1] The parties have continued to meet and confer on these issues and have attempted in good faith to reach agreement. The parties set out their agreed upon proposals below, as well as explain their respective positions where an agreement could not be reached.

## I.    <u>Factual summary of the case and claims and defenses.</u>

<u>Procedural History:</u>

This case involves 13 putative class actions and one individual action arising from a discharge of oil (the "Spill") from a sea floor oil pipeline owned and operated by Defendant San Pedro Bay Pipeline Company.  The pipeline runs from oil rigs approximately 17 miles off the coast of Southern California, and the discharge incident occurred in early October 2021.  Defendant Beta Offshore owns and operates the oil rigs.  Defendant Amplify is the parent company of San Pedro Pipeline Company and Beta Offshore.

---

[1] Pending a ruling on the motions for consolidation (*see, e.g.*, 8:21-cv-1684, Dkt. 29), this document is being filed in the following related-actions with the respective case captions: *Gutierrez*, Case No. 8:21-cv-01628; *Samuelian*, 8:21-cv-01658; *Banzai Surf Company*, Case No. 8:21-cv-01669; *Quality Sea Food, Inc.*, 8:21-cv-01680; *Davey's Locker*, No. 8:21-cv-1684; *Ketcham Tackle LLC*, 8:21-cv-01685; *Newport Surfrider, LLC*, 8:21-cv-01686; *Bitton*, Case No. 8:21-cv-01694; *Whelan*, 8:21-cv-01706; *Beyond Business Incorporated*, 8:21-cv-01714; *N.S.T.*, 8:21-cv-01722; *East Meets West Excursions*, Case No. 8:21-cv-01725; *Charlie's Gyros, Inc.*, Case No. 8:21-cv-01738; *Hill's Boat Service, Inc.*, Case No. 8:21-cv-01734.

JOINT RULE 26(f) REPORT

The 14 related cases have been assigned to this Court:

| Case Title | Case Number |
|---|---|
| *Peter Moses Gutierrez v. Amplify Energy Corporation et al* | 8:21-cv-01628 |
| *Stephen E. Samuelian et al v. Amplify Energy Corp., et al* | 8:21-cv-01658 |
| *Banzai Surf Company, LLC v. Amplify Energy Corporation, et al* | 8:21-cv-01669 |
| *Quality Sea Food, Inc. et al v. Amplify Energy Corporation et al* | 8:21-cv-01680 |
| *Davey's Locker Sportfishing, Inc. et al v. Amplify Energy Corporation et al* | 8:21-cv-01684 |
| *Ketcham Tackle LLC v. Amplify Energy Corp. et al* | 8:21-cv-01685 |
| *Newport Surfrider, LLC v. Amplify Energy Corporation et al* | 8:21-cv-01686 |
| *Bradley Bitton et al v. Amplify Energy Corporation et al* | 8:21-cv-01694 |
| *James Whelan et al v. Amplify Energy Corporation et al* | 8:21-cv-01706 |
| *Beyond Business Incorporated v. Amplify Energy Corporation et al* | 8:21-cv-01714 |
| *N.S.T. v. Amplify Energy Corporation, a Delaware corporation et al* | 8:21-cv-01722 |
| *East Meets West Excursions, et al v. Amplify Energy Corporation, et al* | 8:21-cv-01725 |
| *Charlie's Gyros, Inc. v. Amplify Energy Corporation et al* | 8:21-cv-01738 |
| *Hill's Boat Service, Inc. v. Amplify Energy Corporation et al* | 8:21-cv-01734 |

All of these actions are putative class actions except for *Hill's Boat*. The plaintiff in *Hill's Boat* intends to join one of the consolidated class actions and agrees to place its case on the same schedule as the class actions.

Plaintiffs are seeking damages for property damage, economic losses, and, in some cases, personal injury and medical monitoring costs allegedly caused by the discharge of oil. Plaintiffs bring a variety of claims, including negligence, public and private nuisance, strict liability for ultrahazardous activities, violations of the Oil

2                                                   JOINT RULE 26(f) REPORT

Pollution Act, violations of the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, violations of California's Unfair Competition law, trespass, battery, medical monitoring, and violations of CERCLA.

In the current complaints, Plaintiffs represent a variety of overlapping classes, which include various combinations of persons or businesses who allege that they were economically harmed as a result of the Spill, including commercial fishing businesses, businesses providing boat charters for sport fishing or sea-life observation, beachfront real property owners and lessees, surfing businesses, diving businesses, businesses in seafood sales, other retail businesses, and individuals working in the above referenced businesses.  Plaintiffs seek damages for lost profits and earning capacity, property damage, medical and contamination monitoring plans, and response costs.

**Factual Background:**

A portion of the San Pedro Bay Pipeline (the "Pipeline") ruptured on or around October 2, 2021, resulting in a release of crude oil into the San Pedro Bay, an inlet of the Pacific Ocean.  The oil leaked out of a crack or split in the Pipeline, four to five miles from the Huntington Beach shore. A quantification of the oil that was released from the Pipeline into the Pacific Ocean has not been finalized.  The U.S. Coast Guard and FBI are investigating the cause of the Pipeline failure, including potential involvement of large commercial ship(s) whose anchor(s) may have come into contact with the Pipeline.  To date, the Coast Guard has identified two "parties in interest": the MSC Danit, and COSCO Beijing, which are suspected of striking the Pipeline with their anchors.

Plaintiffs allege that as a result of the Spill, beaches and harbors in Huntington Beach, Newport Beach, Laguna Beach, and Dana Point were closed for nine days. The beaches and harbors are now re-opened.  The California Department of Fish and Wildlife ("CDFW") closed certain fisheries in areas impacted by the Spill on October 2, 2021.  The CDFW reopened the fisheries on November 30, 2021.

JOINT RULE 26(f) REPORT

## II.    Synopsis of the principal issues in the case.

**Procedural Issues:**

Procedural issues the parties have identified to date are likely to include:

1.    Consolidation of related actions and appointment of interim class counsel (currently set for hearing on December 15, 2021).

2.    Class treatment of Plaintiffs' claims and/or damages.

3.    The appropriate discovery, motion, and trial schedule in light of the federal and state investigations and the timing of the repair and replacement of the Pipeline.

4.    Whether other parties should be added to this litigation.

**Liability Issues:**

Liability issues the parties have identified to date are likely to include:

1.    The Oil Pollution Act ("OPA") claims process.

     a. *Plaintiffs' Position*:   Whether Defendants' Oil Pollution Act ("OPA") claims process provides adequate disclosures to class members, does not unfairly prejudice Plaintiffs' rights, and properly limits any releases to offsetting damages for interim short-term payments.

     b. *Defendants' Position*:   Whether Plaintiffs exhausted the mandatory OPA claims process before filing suit, whether any or all of the Plaintiffs' claims are preempted by the OPA or other federal statutes, and whether the OPA statutory cap limits Plaintiffs' recovery.

2.    Defendants' anticipated legal challenges to Plaintiffs' stated claims for relief.

3.    Whether and to what extent Defendants, as well as additional third parties, were negligent in operating the Pipeline and responding to the discharge.

4.    Third party liability for Plaintiffs' or Defendants' alleged damages.

5. Whether Defendants' actions are the proximate cause of any of Plaintiffs' and the proposed Classes' alleged damages.

6. The scope of Plaintiffs' and the proposed Classes' damages.

7. The amount of liability insurance available to cover Plaintiffs' and Class Members' damages.

**Discovery Issues:**

Discovery issues the parties have identified to date are likely to include:

1. The preservation of evidence of the damaged portion of the Pipeline (including the protocol for repair, removal, storage, and inspections, addressed in more detail below in Section V.D [Evidence Preservation]).

2. The appropriate sequencing of fact discovery in light of ongoing governmental investigations into the root cause of the Spill.

3. Additional parties and amendment of pleadings.

    a. Plaintiffs' counsel in certain individual cases reserve the right to add additional plaintiffs as class representatives in amended complaint(s).

    b. If Plaintiffs do not name certain additional defendants in their consolidated amended complaint, Defendants expect to implead third-party defendants who may be liable to the Defendants for damage they caused to the Pipeline and from which Defendants may be entitled to contribution for Plaintiffs' alleged damages, in particular any shipping company potentially responsible for damaging or displacing the Pipeline. The Parties have agreed that Defendants will move to join any other parties within sixty (60) days from the date the Plaintiffs file an amended complaint or complaints, and will notice any such motion for hearing within ninety (90) days thereof. Defendants reserve their right to add defendants as additional information becomes available,

JOINT RULE 26(f) REPORT

including the findings of various governmental entities performing investigations of the Pipeline leak.  Plaintiffs do not currently plan to name additional defendants given the information currently known to them, but reserve their right to add defendants as additional information becomes available, including the findings of various governmental entities performing investigations of the Pipeline leak.

c. Should the Court consolidate all related matters currently pending, Plaintiffs will file one or more consolidated amended complaint(s) (with all relevant parties, claims, and classes contained therein), within thirty (30) days of consolidation and appointment of interim lead class counsel, and Defendants will have sixty (60) days after any complaint or complaint is filed to file responsive pleading(s).  If the Court does not consolidate the cases, the Parties will meet and confer regarding the time Defendants will have to respond to the pending complaints.

## III.   **Anticipated motions.**

The Court has set a hearing for December 15, 2021 regarding motions for consolidation of related actions and appointment of interim class counsel (8:21-cv-1725, Dkt. 20).[2]

The Parties are exchanging information regarding 1) preservation and inspection of the Pipeline and related evidence, and 2) Defendants' OPA claims process.  Plaintiffs anticipate that motion practice on these issues may be necessary if the Parties cannot reach agreement on certain issues under discussion.

---

[2] Such motions had previously been filed by *Banzai Surf Company*, Case No. 8:21-cv-01669 (Dkt. 15); *Bitton*, Case No. 8:21-cv-01694 (Dkt. 18); *East Meets West Excursions*, Case No. 8:21-cv-01725 (Dkt. 14); *Charlie's Gyros, Inc.*, Case No. 8:21-cv-01738 (Dkt. 13); *Beyond Business Inc.*, 8:21-01714 (Dkt. 19); *Davey's Locker*, 8:21-cv-1684 (Dkt. 29), and as noted above, the Court has now set a deadline of December 10, 2021 for such submissions.

JOINT RULE 26(f) REPORT

1    Given the governmental investigations into the root cause of the Spill and state
2    and federal authorities' continued involvement in matters related to these cases,
3    Defendants may also bring motions concerning the interplay between these cases and
4    governmental investigations or oversight.   Defendants may also need to move to
5    implead additional defendants based on the results of those investigations.

6    Defendants will likely bring a motion to dismiss pursuant to Rule 12(b)
7    depending on the allegations and claims in the expected consolidated amended
8    complaint(s).  Because of the large number of claims brought in the related cases and
9    the complexity of the governing law, the Parties jointly request that the Court grant
10   an extension of the page limits normally applicable to Rule 12(b) motions.   The
11   Parties request forty (40) pages for motion(s) and opposition(s), and twenty (20)
12   pages for reply briefs.

13   Plaintiffs will also bring a motion for certification of the class(es) in the
14   anticipated consolidated class action complaint. The Parties request the same page
15   length extensions above for class certification briefing.

16   **IV.    Settlement discussions and settlement procedures.**

17   Plaintiffs and Defendants have not engaged in settlement discussions to date.
18   The Parties are open to engaging in settlement discussions at the appropriate time,
19   including before a court-appointed or private mediator. The Parties agree to meet and
20   confer at a minimum every three months regarding the appropriateness of engaging
21   in mediation at that time.

22   The Parties agree to keep the Court apprised of any notable developments in
23   the settlement process. As required by L.R. 16-15.2, the parties have completed an
24   ADR Procedure Selection Request and appended it to this report. Ex. 1.  The Parties
25   have provisionally selected Procedure No. 3 but jointly reserve the right to amend
26   their request at the appropriate time.

27

28

JOINT RULE 26(f) REPORT

**OPA Claims Process:**

Defendants' Position:

Defendants are in compliance with their obligations to administer a claims procedure pursuant to the Oil Pollution Act (OPA), 33 U.S.C. § 2700, *et seq.* They have set up a claims process pursuant to the OPA that allows for certain claimants harmed by the spill to seek compensation from Defendants and in the process release any claims they have against Defendants.  The release Defendants have provided claimants informs claimants that they **"may be eligible for a short-term interim payment without being required to sign a release**, or give up any claims, or to surrender any litigation rights." (emphasis original).  The release also provides notice of the pending class actions, and states:

> You have been informed and understand the following proposed class action lawsuits against Amplify are pending in federal district court in the Central District of California.  These lawsuits were recently filed and are in the early stages of litigation.  The lawsuits generally define the proposed class as all persons or business in the United States that claim economic losses, or damages to their occupations, businesses, and/or property as a result of the Incident.  You may be a member of the potential class described in these lawsuits: [listing the fourteen lawsuits that have been filed to date].

The release provides the contact information for each of the Plaintiffs' counsel in the fourteen lawsuits.

Defendants have provided information to Plaintiffs regarding the administration of the claims process, including the number of releases Defendants have obtained.  Defendants will continue to provide information to Plaintiffs as the claims process continues, and meet and confer with Plaintiffs on these issues.  Defendants disagree with Plaintiffs' criticism of the release and believe that it rests on a misunderstanding of OPA.

JOINT RULE 26(f) REPORT

Plaintiffs' Position:

Pursuant to Federal Rule of Procedure 23(d) and 33 U.S.C. § 2713, Plaintiffs seek to ensure that Defendants' OPA claims process 1) provides notice of pending class actions and that claimants may be entitled to additional compensation through same, as well as contact information for class counsel; 2) includes clear disclosures that releases are not required to apply for or receive payments; and 3) does not release long-term damages and instead only serves to offset damages for interim short-term payments provided. *See, e.g.*, *Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *7, 2016 U.S. Dist. LEXIS 27818, at *21-22 (C.D. Cal. Mar. 3, 2016). To this end Plaintiffs have asked Defendants various questions about their OPA claims process in an attempt to address these concerns. Defendants have provided copies of releases and initial responses to some of those questions, and the Parties are continuing to meet and confer on the matter. Plaintiffs note that the release Defendants provided, from which they quote above, states that it is "intended to be a complete and final release" of all damages "known and unknown" arising from the Spill, and thus, contrary to #3 above, is not limited to offsetting payments for short-term damages.

## V.    **Discovery plan.**[3]

The Parties' combined lists of subjects on which discovery may be needed include the following, without limitation: (a) the nature, scope, and cause(s) of the oil spill; (b) the response to the oil spill; (c) the containment and clean-up of the oil spill; (d) audits and other analyses regarding Defendants' oil spill prevention policies and practices; (e) installation, maintenance, repair, and supervision of pipelines, including the pipeline at issue; (f) prior oil spills by Defendants and measures taken by Defendants in response thereto; (g) payments to claimants under the Oil Pollution

---

[3] The Parties' proposed discovery plan contained herein assumes that the related actions will be consolidated, as is supported by the Parties. If the Court decides not to consolidate the cases, the Parties request the opportunity to submit modifications to the proposals herein.

JOINT RULE 26(f) REPORT

Act or any other payments made by any Defendant; (h) insurance and third party obligations; (i) the liability of third parties to Defendants and/or Plaintiffs; (j) damages; (k) to what extent the oil discharged was a proximate cause of any alleged damages; and (l) the appropriateness of class certification.[4] The Parties reserve the right to object to the discoverability and admissibility of discovery requests on these subjects and to contest liability, damages, and any other disputed issues in these cases.

The Parties are negotiating and will submit to the Court an agreed protocol for the exchange of electronically stored information ("ESI"), and an agreed protective order (or competing proposed orders if agreement cannot be reached), within 21 days following appointment of interim class counsel. The protective order will be modeled on the form order of Magistrate Judge Early.

As noted in Section B below, Defendants' position is that discovery should not begin until interim class counsel has been appointed. The Parties otherwise agree that entry of an ESI protocol will not be a reason to delay production of responsive documents that do not require custodians or search terms, and that issuance of a protective order will not be a reason to delay production of documents. The Parties agree to treat documents as confidential if so designated prior to issuance of the protective order.

The Parties have taken steps to ensure that potentially relevant ESI is being, and will continue to be, preserved.

### A.    Initial Disclosures

The Parties agree to exchange initial disclosures pursuant to Federal Rules of Civil Procedure 26(a) by December 7, 2021.

---

[4] While this represents a combined list of the topics the two sides intend to pursue, each side may disagree on the necessity or importance of certain of these topics.

## B.   Timing and Phasing of Discovery

The Parties agree that all subjects of fact discovery, including on merits, damages, and class certification, will proceed simultaneously (not formally phased or bifurcated), to be followed by expert discovery.

Service of discovery requests may be made by email on the Parties. For the avoidance of doubt, service by Defendants on then-lead counsel for Plaintiffs shall accomplish service on all Plaintiffs.

The Parties' positions on the phasing of discovery differs:

Plaintiffs' Position:

Discovery shall commence in accordance with the Federal Rule of Civil Procedure 26(d) and the Court's Standing Orders.[5]

Plaintiffs in *Banzai Surf Company*, 8:21-cv-01669, served a set of Requests for Production on November 10, 2021. These reflected the input of a number of other Plaintiffs also, who have joined or are joining in them when permitted under Federal Rule 26(d).

Plaintiffs oppose the delays on the service of interrogatories and conducting fact depositions proposed by Defendants below, which will impede the prosecution of this action in a timely and efficient manner. As Plaintiffs explain in greater detail in Section VII below, most discovery of Defendants can proceed without regard to the timing of the removal of the pipeline or of the official investigation, the only grounds Defendants proffer for seeking such a broad de facto stay. To substantially delay the start of entire types of discovery also disregards this Court's admonishment that it will "impose tight deadlines to complete discovery."[6] Moreover, while Defendants suggest that Plaintiffs should have the "benefit" of the investigation's

---

[5] *See* Standard Order Setting Schedule Conference (noting "at the Scheduling Conference the Court will impose tight deadlines to complete discovery"), available at https://www.cacd.uscourts.gov/sites/default/files/documents/DOC/AD/ORD%20SETTING%20SCHED%20CONF.pdf.

[6] *Id.*

JOINT RULE 26(f) REPORT

findings to guide their discovery, no one can predict when the investigation may conclude and its findings be made public—based on other mass disasters, it may take a year or more. Regardless of the length of time, however, there is much the Parties can accomplish through various forms of discovery, rather than sitting on their heels and waiting.

<u>Defendants' Position:</u>

Discovery should begin once the Court appoints or the Plaintiffs agree to a leadership structure for the related cases.  Such an approach aligns with the recommendation of the Manual for Complex Litigation, which notes that "[i]t is ordinarily best to defer commencement of discovery until after a [scheduling] plan has been adopted."  *See* Manual Complex Lit. § 11.421 (4th ed.).  That being said, Defendants have reviewed the discovery requests and have begun to formulate responses.  Defendants request that their 30 days to respond begin upon the appointment of lead counsel.  That will permit counsel for the Defendants to meet and confer with lead counsel for the Plaintiffs to narrow disputes before responses are due.  Defendants submit that the short difference in time frame will not impact the overall resolution of the case but will improve the efficiency of the discovery process.

Defendants request that the Court sequence discovery to permit the Parties to benefit from the ongoing federal and state investigations before serving interrogatories or beginning depositions.  Those investigations are essential to understanding the root cause of the Spill, which took place offshore and from a pipeline located on the seafloor.  The results of these investigations will help the Parties better target their discovery and lead to a more efficient resolution of these cases.  The investigation may also reveal other entities responsible for damage to the Pipeline that the Parties may want to add to the suit.  Proceeding in this manner is not a "de facto" stay of discovery, as Plaintiffs assert, nor are Defendants, who are cooperating with the numerous federal and state investigations, proposing to "sit[] on

JOINT RULE 26(f) REPORT

their heels." Under Defendants' proposal, document discovery would begin promptly once the Court appoints a leadership structure, and the parties would be able to efficiently progress through fact discovery in the next year.

Accordingly, Defendants propose that the Parties may begin to serve interrogatories on February 14, 2022. It will be difficult for the Defendants to provide useful interrogatory responses before that time (and possibly even later) because investigations will likely still be ongoing and the damaged portion of the Pipeline may not even be repaired by then, much less replaced. The investigations are likely to improve Defendants', and Plaintiffs', understanding of the relevant events, including the role of other parties in damaging the Pipeline. Further, Defendants may be unable to respond fully to interrogatories about the spill without the benefit of an examination of the pipeline. The parties will thus be able to provide more detailed responses to interrogatories after examination of the Pipeline.

Defendants propose that the Parties may begin to take fact witness depositions on July 5, 2022. For the same reasons stated above, it makes sense for the parties to focus their efforts on document discovery and other discovery before depositions begin. Plaintiffs' proposal that document discovery and depositions begin and end on the same dates will inevitably lead to requests from Plaintiffs to depose witnesses more than once as government agencies release their findings, the Pipeline is removed from the ocean floor, and Defendants produce additional documents. By sequencing discovery as proposed by Defendants, the parties will be able to proceed efficiently. Plaintiffs will have the benefit of investigative findings and Defendants' document productions in deciding who to depose and what to ask.

Defendants have no interest in needlessly delaying these proceedings. But as this Court noted in setting an initial scheduling conference, the "management of these cases presents unique challenges." (8:21-cv-1725, Dkt. 20). Defendants have proposed sequencing of discovery to address some of these challenges and "to ensure the orderly preparation and timely resolution of these cases by trial or settlement."

JOINT RULE 26(f) REPORT

*Id*.   There is no reason that these cases should proceed on a schedule that risks excessive, non-targeted discovery, including multiple depositions of the same witnesses.  As Defendants note above, per the requirements of the OPA, Defendants have set up a claims process that provides individuals and businesses the option to seek interim (or total) relief while these cases progress.

### C.   Limitations or Modifications to Discovery

**Depositions:**

The Parties agree that the limitation on the number of depositions imposed by Rule 30(a)(2) (limiting the number of depositions to 10 per party) should be modified, but do not agree to a modified limit of depositions as to the named Defendants' witnesses or treatment of Rule 30(b)(6) depositions, as set forth in each party's position below.

The Parties agree that Defendants will be allowed to depose each named plaintiff on the consolidated amended complaint(s) where the plaintiff is a natural person, and to depose the corporate entity and one additional witness where the plaintiff is a corporate person.  The Defendants also reserve the right to seek additional depositions of plaintiffs or parties related to the plaintiffs for good cause.

The Parties agree that third-party depositions should not be limited to a certain number at this time. With regard to witnesses related to the federal or state investigation into the Spill, the Parties will meet and confer on a protocol to coordinate selecting and noticing certain witnesses for deposition.

Plaintiffs' Position:

Plaintiffs request the modification of the default deposition limits set forth in Rule 30(a)(2) to allow Plaintiffs to take up to 40 fact witness depositions of the currently named Defendants' witnesses. While Plaintiffs will not receive Defendants' initial disclosures, corporate organizational charts, or proposed list of document custodians until after the date this Status Report is filed, and thus cannot review or utilize same for purposes of a particularized showing, the Defendants in this litigation

JOINT RULE 26(f) REPORT

include three separate entities that were responsible in different capacities for the pipeline that ruptured. Plaintiffs anticipate that multiple job titles of Defendants' employees will have responsibility for each of the relevant issues in the case— including but not limited to inspection, maintenance, cleaning, testing, and repair of the pipeline; spill prevention, monitoring, detection, alerting, and response; corporate risk management, regulatory compliance, and budgeting; investigation of the rupture, the spill, and the consequences; interactions with authorities regarding the pipeline, the rupture, and the clean-up; and the OPA claims process—and that multiple personnel may have filled those positions over the time period relevant to liability in this litigation. Plaintiffs submit that 40 is a modest number of depositions to develop adequate evidence on these complex issues and carry their burden of proof under the various causes of action they have brought. To the extent not all 40 depositions are required, Plaintiffs have no incentive to take more depositions than required.

Plaintiffs also note that Defendants' position that they be permitted up to two depositions per named Plaintiff, which Plaintiffs do not oppose, may well allow them to take more than 15 fact depositions of Plaintiffs, and that Defendants have not proposed limiting the number of depositions they can take of third parties or of other Defendants who may be named by either side. Thus Defendants are seeking to preserve their ability to take more than 15 fact depositions relevant to their defenses (to which Plaintiffs have not objected), while limiting Plaintiffs to only 15 depositions to carry their burden of proof.

Should the Court not be inclined to lift the deposition limit beyond 15 as to Defendants' employee witnesses at this time, Plaintiffs request that the Court order Defendants to provide Plaintiffs with 1) corporate organizational charts from ten years prior to the spill to present; 2) a proposed list of custodians for document discovery with titles, departments, and years of employment; and 3) a Rule 30(b)(6) witness on the topics of corporation organization and ESI within 30 days of entry of the Court's leadership order, and require the Parties to meet and confer within two

weeks thereafter regarding the number of depositions of Defendants that Plaintiffs should be permitted, with any remaining dispute brought to the Court promptly thereafter.

Consistent with the 1993 advisory committee notes to Rule 30,[7] Plaintiffs believe that Rule 30(b)(6) depositions shall be treated as one deposition, despite the number of witnesses designated to testify on behalf of the organization, and that Plaintiffs be allowed to issue two 30(b)(6) notices of deposition, so that an early notice regarding corporate organization, ESI and preservation issues may be served forthwith.

Defendants' Position:

At this point, before Parties have served initial disclosures or exchanged any discovery, Plaintiffs have no basis to request such a material modification of the Rule 30(a)(2) deposition limits to allow Plaintiffs to take 40 depositions from Defendants. *See Pax Water Techs., Inc. v. Medora Corp.*, 2019 WL 12381114, at *7 (C.D. Cal. Oct. 15, 2019) ("A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions.").[8]

Nonetheless, in the interests of compromise Defendants offered to allow Plaintiffs to take 15 depositions from Defendants.  After engaging in discovery, if Plaintiffs believe that more than 15 depositions are required, Defendants will discuss in good faith a further modification of the deposition limits and Plaintiffs can always seek a modification for good cause.

---

[7] "A deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition even though more than one person may be designated to testify." Rule 30 advisory committee notes (1993 amendments).

[8] *See also Ortolani v. Freedom Mortg. Corp.*, 2018 WL 6112550, at *3 (C.D. Cal. May 15, 2018) (denying motion to exceed deposition limits where Plaintiff had not taken any depositions so "Plaintiff cannot possibly know what information [she] needs but cannot obtain from [her] ten permitted depositions"); *All. Life Ins. Co. of N. Am. v. Garrity*, 2014 WL 12660989, at *1 (C.D. Cal. Dec. 18, 2014) (denying motion to allow additional deposition where it was too early in the case).

JOINT RULE 26(f) REPORT

Plaintiffs also have no basis to request expedited and overbroad discovery into Defendants' organizational structure if the Court does not immediately lift the Rule 30 deposition limit.  There is no reason that the Court must decide at the outset of this case how many depositions are needed.  After the parties engage in discovery, including depositions, the parties and Court will have a much better understanding of the case and whether additional depositions are needed.  Plaintiffs can request and Defendants will produce organizational charts.  Moreover, Amplify is a public company with public filings about its operations and structure.  The information Plaintiffs seek on an expedited basis about Defendants' organizational structure going back 10 years is not at all determinative of how many depositions will be needed.  Defendants will also propose custodians for document discovery at the appropriate time.

Defendants' request to modify the Rule 30(a)(2) limits as to Plaintiffs is different.  The parties already know that Defendants will need more than 10 depositions of Plaintiffs as there are far more than 10 plaintiffs.

**Interrogatories:**

Plaintiffs' Position:

For similar reasons to those set forth above, Plaintiffs request the limitations imposed by Rule 33(a)(1) (limiting interrogatories to 25 per party) be lifted, and that instead Plaintiffs should be limited to 100 interrogatories to the currently named Defendants, and Defendants should be limited to 25 interrogatories to each named plaintiff. This proposal in all likelihood will result in Defendants being allowed more interrogatories total than Plaintiffs.

Defendants' Position:

Defendants believe that the limits on interrogatories set forth in Rule 33(a)(1) should apply.  As with their request for more depositions, Plaintiffs have no basis to seek additional interrogatories, especially at this juncture of the case.  *Smith v. Premiere Valet Servs., Inc.*, 2020 WL 7034346, at *8 (C.D. Cal. Aug. 4, 2020) ("[A]

JOINT RULE 26(f) REPORT

party seeking leave to serve additional interrogatories must make a particularized showing of why the additional discovery is necessary."); *Aquastar Pool Prod., Inc. v. Color Match Pool Fittings, Inc.*, 2019 WL 12536904, at *2 (C.D. Cal. Sept. 6, 2019) (rejecting request for additional interrogatories where Plaintiff had not described "specific information" sought by additional interrogatories).

### D.    Evidence Preservation

Plaintiffs' Position:

Plaintiffs' counsel in several actions sent letters to Defendants requesting preservation of the Pipeline and asking that Defendants not alter, further repair, remove, or damage the Pipeline unless and until Plaintiffs have advance reasonable notice and the opportunity to be present as stakeholders.  Through several meet and confer calls, including on October 19, October 28, and November 5, 2021, Defendants confirmed verbally that Plaintiffs would be given advance notice of any alterations, repair, or removal of the pipeline.  Despite this promise, on November 5, 2021, Defense counsel sent an e-mail to all Plaintiffs' counsel advising them that the Pipeline had in fact already undergone a "cleaning" and "rewrapping" process, beginning on October 24, 2021.   Plaintiffs' counsel responded the same day by requesting that Defendants immediately disclose the nature and scope of all such work performed, including any photography, videotaping, and sampling; indicate whether permission for this work had been obtained by the appropriate authorities; and explain why prior notice of it had not been given to Plaintiffs. Preservation of the pipeline was also the subject of an *ex parte* application filed by Plaintiffs in the *Beyond Business* action on November 8, 2021 (8:21-cv-01714-DOC-JDE, Dkt. 22), which the Court granted on November 18, 2021 (8:21-cv-01714-DOC-JDE, Dkt. 31). The Court's Order requires Defendants to notify Plaintiffs in writing before taking any action that could lead to spoliation of the evidence relating to the pipeline, the platform, or components thereof. Following the Court's Order, Defendants informed Plaintiffs that additional wrap to the presumed leak location would be applied and

JOINT RULE 26(f) REPORT

that temporary repair of the Pipeline would not begin until December 15, 2021 at the earliest. On November 20, 2021, a new oil sheen was reported in the same location of the prior Spill and Defendants confirmed additional wrap to the Pipeline had been applied that morning.

Prior to the Court's ruling on the *ex parte* application, all Plaintiffs joined in sending Defendants a proposed pipeline preservation stipulation on November 17, 2021. Beyond the provisions in the Order, Plaintiffs have also sought Defendants' agreement on additional provisions, including, *inter alia*, Defendants' cooperation regarding the scheduling of work to be commenced following regulatory approval, the amount of advance notice to be provided to Plaintiffs of additional repairs or removal, requirements that Defendants promptly provide copies of all photographs and video of the "cleaning" and "rewrapping" performed by Defendants on the pipeline, and a description of any sampling, including but not limited to any biological or metallurgical sampling, performed on the pipeline before its removal from the seabed; and that Defendants not object to Plaintiffs engaging consultant(s) to conduct and record a video inspection of the pipeline prior to and during its removal, so long as not prohibited by relevant authorities. While Defendants have indicated their agreement to some of these provisions via email and in their section below, Plaintiffs are awaiting Defendants' responses on other provisions, and seek to have any agreement formalized through stipulation and order.

The Parties continue to meet and confer on the matter. To the extent disagreements over Plaintiffs' proposed additional protocols remain, Plaintiffs reserve the right to seek additional intervention and guidance from the Court.

Defendants' Position:

Defendants dispute many aspects of Plaintiffs' position statement on evidence preservation, especially the Plaintiffs' account of the Parties' discussions.  Should Plaintiffs bring a motion on these issues—and as explained below, Defendants believe any motion will be unnecessary and premature—Defendants will respond in

full to Plaintiffs' misleading account of the Parties' exchanges regarding evidence preservation. Defendants have fulfilled their commitments and obligations regarding the preservation of evidence, and will abide by their obligations under the Court's November 17, 2021 order to provide Plaintiffs notice before taking any action that might result in spoliation of relevant evidence.

As Defendants have explained to Plaintiffs before, the work Defendants have done on the Pipeline after the Spill has been at the direction of and in coordination with state and federal authorities. Defendants nonetheless recognize and appreciate Plaintiffs' desire to be kept informed regarding these matters. To that end, Defendants have provided Plaintiffs' counsel with updates on November 1, November 5, November 9, November 12, November 17, November 18, November 19, November 20, and November 21. Defendants will continue to do so.

Defendants are actively negotiating with Plaintiffs about all of the issues Plaintiffs raise in their position statement and expect to be able to resolve all the issues. Defendants are open to entering into another stipulation that would provide more concrete guidance on what information Defendants will share with Plaintiffs about any repair and/or replacement of the Pipeline, and are in active negotiation with Plaintiffs on the form of such a stipulation. Defendants have said they will share all video in their possession of any inspections or work done on the Pipeline. Defendants have already told Plaintiffs they have no objection to Plaintiffs engaging consultant(s) to conduct and record a video inspection of the Pipeline prior to and during its removal, so long as not prohibited by relevant authorities. Defendants have been in active negotiation with Plaintiffs about allowing Plaintiffs to engage a dive team to record any work done on the Pipeline. There are no ripe disputes between the Parties.

Plaintiffs have also asked for more detail on the timing of Defendants' planned repairs to the Pipeline. Defendants explained that Amplify submitted to PHMSA a preliminary, temporary repair plan for the Pipeline. On November 19, Defendants produced the temporary repair plan to Plaintiffs' counsel. PHMSA has not approved

JOINT RULE 26(f) REPORT

the temporary repair plan, and the proposed repairs will not take place until PHMSA approves the plan.  Defendants have no control on when approval might occur; Defendants therefore cannot provide a more specific timeline to Plaintiffs because Defendants are waiting for approval from a federal agency without a defined deadline for the agency to act.

Further complicating matters, there is a limited pool of divers qualified to perform the necessary repairs at the depth the Pipeline sits.  Defendants had arranged for a specialized team to be standing by for PHMSA approval.  However, as Defendants informed Plaintiffs' counsel on November 20, that team has been called away by the U.S. Navy to the Persian Gulf, and Defendants understand the earliest possible date of repair work would be December 15, though that date is still quite unlikely.  More realistically, the work would occur in 2022, likely in February.  The dive team has additional obligations to the U.S. Navy and their schedule is outside of Defendants' control.  If Defendants' understanding changes such that pre-December 15 repair work appears likely, Defendants will let Plaintiffs know with as much notice as Defendants can practicably provide.

Defendants intend to conduct the repairs as soon as practicable after PHMSA approves a plan to do so.  Defendants have asked Plaintiffs to make sure they have their team ready, with a vessel, if Plaintiffs wish to monitor the repair work.

As Defendants have told Plaintiffs, the ultimate plan is to repair and then de-oil the Pipeline before removing the damaged portions of the Pipeline from the seafloor.  Several government agencies have requested to take possession of any portion of the Pipeline removed.  Defendants intend to comply with these requests and provide the removed portions to one of these government agencies.

## VI.    Trial Estimate.

This case is to be tried to a jury. The Parties believe the trial will likely take a minimum of 28 trial days after *voir dire*. This estimation is subject to change depending on the outcome of class certification motions and the number of plaintiffs

JOINT RULE 26(f) REPORT

1   that remain involved in the litigation at trial. Third-party defendants may also be

2   impleaded. Motions practice may winnow the number of issues that remain at trial.

3       While the trial estimate is subject to change depending on the outcome of class

4   certification motions and the number of Plaintiffs that remain involved in the

5   litigation at trial, the current estimate is based upon several factors, including that the

6   present action implicates overlapping and complex regulatory and statutory schemes

7   at both the state and federal level. The Parties anticipate extensive testimony by

8   expert and percipient witnesses, including testimony regarding the cause of the Spill;

9   the impact of the Spill on the ocean ecosystem, the total quantity of fish harvested by

10  class members, and the marketability of class members' harvests; and lost income

11  and profits suffered by class members as a result of the Spill.

12      The Parties also anticipate the need for extensive expert and percipient

13  testimony on, *inter alia:* Defendants' integrity management practices and control

14  room operations; their notification of and temporal response to the alarms triggered

15  by the Spill; the quantity of oil released from the San Pedro Bay Pipeline, where that

16  oil traveled, in what quantities, and at what times; the clean-up mechanisms

17  employed; and the concentrations of oil present in the water at various locations

18  impacted by the Spill, with the corresponding effect on the populations of the

19  different fish species harvested by class members.

20  **VII.  <u>Other issues affecting the status or management of the case and
    proposed schedule.</u>**

21  <u>Plaintiffs' Position:</u>

22      Pursuant to Local Rule 26-1(a), Plaintiffs believe that this action and related

23  cases are appropriately designated as complex, and that the Manual for Complex

24  Litigation is a valuable resource for the parties and will endeavor to use its procedures

25  as appropriate.  Plaintiffs propose the following schedule:

26      Initial Disclosures:

27          December 7, 2021

28

JOINT RULE 26(f) REPORT

1    Filing consolidated complaint or complaints:

2           30 days from appointment of Interim Class Counsel

3    Defendants' response to complaint(s):

4           60 days after filing of consolidated complaint(s)

5    Close of fact discovery:

6           September 16, 2022

7    Expert Reports:

8           October 14, 2022

9    Expert Rebuttal Reports:

10          November 11, 2022

11   Close of expert discovery:

12          December 16, 2022

13   Class Certification Motion to be filed:

14          January 27, 2023

15   Opposition to Class Certification Motion to be filed:

16          March 3, 2023

17   Reply to Class Certification Motion to be filed:

18          March 31, 2023

19   Hearing on Class Certification:

20          April 17, 2023

21   Final Motion Cutoff:

22          June 16, 2023

23   Pretrial Conference:

24          July 17, 2023

25   Trial:

26          September 5, 2023

27          Plaintiffs believe that Defendants' proposed schedule does not promote the

28   "just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, and

JOINT RULE 26(f) REPORT

that the Parties can bring this case to trial well before Defendants' proposed date of April, 2024. Defendants' proposal contains both large gaps and unnecessary compressions which introduce inefficiencies and prejudice Plaintiffs' ability to timely gather evidence and proceed to trial.

For example, Defendants' proposed schedule delays the start of fact depositions while then impracticably compressing them. Specifically, Defendants propose that fact witness deposition may not even commence until July 2022, and then impose an additional provision that as to any deposition occurring prior to Defendants' proposed date for the substantial completion of document discovery in November 2022, the production of additional documents cannot constitute a good faith basis for seeking additional time with the witness. This goes beyond the requirements of the Federal Rules and creates perverse incentives for the parties to, respectively, delay the production of key documents until near the end of fact discovery, and not begin depositions until the November date. Adding to the unfairness of this approach, Defendants then propose that fact witness deposition discovery *close* on February 3, 2023. Practically speaking, this would result in nearly all fact depositions having to take place within 3 months over the holidays.

Plaintiffs submit that a more efficient and fair approach would be to have rolling productions by custodians, with the parties meeting and conferring regarding custodians to be prioritized for production, such that their depositions can proceed before others without significantly increasing the risk that later-produced documents lead to requests for additional depositions. While Plaintiffs believe the safeguards of the Federal Rules are sufficient, this approach enhances them without incentivizing gamesmanship or inefficient practices in the manner Defendants' proposed schedule does.[9]

---

[9] Plaintiffs note that their schedule proposed above necessarily assumes that the start of depositions is not delayed until July, 2022, as proposed by Defendants, and that Defendants' proposed substantial completion of document production date of November, 2022 is not adopted. Plaintiffs oppose these proposals for the reasons noted in Section V.B. above.

JOINT RULE 26(f) REPORT

While Defendants object that the pipeline has not yet been fully repaired or removed, and that the official investigation is proceeding, there is ample deposition and other discovery that can proceed prior to either of these being completed. For example, discovery from Defendants as to all twelve topics that the parties list above can proceed in large part without removal or physical inspection of the pipeline, including discovery on the scope of the Spill, Defendants' response to the Spill, Defendants' containment and clean-up of the Spill, Defendants' oil spill prevention policies and practices; Defendants' installation, maintenance, repair, and supervision of the pipeline prior to the spill; and prior oil spills by Defendants and measures taken by Defendants in response thereto. Physical inspection of the removed pipeline is primarily needed for expert discovery, not fact depositions of Defendants, but to the extent a Defendant fact witness's knowledge of the post-spill physical condition of the pipeline is a reason for their deposition, Plaintiffs will have no incentive to take such a deposition prior to the opportunity for inspection. It is not a reason to halt all depositions until July 2022.

Similarly, Plaintiffs are willing to work with Defendants and official investigating agencies as to the appropriate sequencing of depositions of those agency employees involved in the investigation, and to delay depositions of high-level investigators for a reasonable period of time. Indeed, it is in Plaintiffs' interest to do so, so that those investigators' findings are sufficiently developed to provide useful testimony. Meanwhile, the depositions of eyewitnesses and those who give statements to investigators can proceed, as well as depositions of Defendants' employees on the topics listed above.

Defendants' Position:

Defendants agree that this action and related cases are appropriately designated as complex pursuant to Local Rule 26-1(a), and that the Manual for Complex Litigation is a valuable resource for the parties and will endeavor to use its procedures

JOINT RULE 26(f) REPORT

as appropriate.  Defendants have consulted the Manual for Complex Litigation in making the following proposals.

Defendants submit that Plaintiffs' proposed schedule is not feasible and will not be efficient.  In particular, it will be challenging to complete fact discovery by September 16, 2022.  Plaintiffs have themselves stressed the complexity of these cases in making their premature proposal to extend the deposition limits in Rule 30(a)(2).  The damaged Pipeline, a piece of evidence that the Plaintiffs submit is key, remains on the ocean floor with no certain timeline for its repair and removal.  At the time of submitting this report, Defendants believe it is highly unlikely that the first round of temporary repairs on the Pipeline can begin until February 2022.  There are also several state and federal investigations currently pending.  Discovery should be structured so as not to interfere with those investigations, but also in such a way as to be informed and guided by those investigations.

The Manual for Complex Litigation advises that in some situations it may be necessary to sequence discovery.  Manual Complex Lit. § 11.422 (4th ed.) ("Some judges prescribe a sequence for particular types of discovery—for example, interrogatories may be used to identify needed discovery and documents, followed by requests for production of documents, depositions, and finally requests for admission.").  Here, sequencing is appropriate because of the multiple federal and state investigations occurring in parallel with these cases.  Because of the location of the Pipeline on the ocean floor, and the involvement of foreign ships and entities, it is simply impossible for the Parties to fully understand the cause of the Spill without the benefit of these investigations.  Accordingly, Defendants have proposed delaying the exchange of interrogatories and taking of depositions for a few months to allow those investigations to proceed.

Defendants also propose that absent a showing of good cause or agreement between the Parties, witnesses will sit for deposition only once.  If a party chooses to depose a witness before the deadline for substantial completion of document

JOINT RULE 26(f) REPORT

discovery, it is not good cause that documents relevant to that witness are produced after the deposition.  Defendants submit there is nothing unusual about this approach, which ensures that discovery proceed efficiently without forcing witnesses to sit for multiple depositions.  Plaintiffs are concerned that this proposal will push all fact depositions into the period between the deadline for substantial completion of document discovery and the end of fact discovery.  To address this concern, Defendants are open to working with Plaintiffs to complete document discovery from particular witnesses before the substantial completion deadline to ensure that depositions will be spread over a more extended period.

Defendants therefore propose the following deadlines and provisions to govern fact and class certification discovery:

**Disclosures and Pleadings**

Initial Disclosures:

December 7, 2021

Filing consolidated complaint or complaints:

30 days from appointment of Interim Class Counsel

Defendants' response to complaint(s):

60 days after filing of consolidated complaint(s)

Responses to the parties' initial document requests

30 days from appointment of Interim Class Counsel with documents will produced on a rolling basis.

**Fact Discovery**

Serve all document requests:

June 3, 2022

Parties will substantially complete document production:

November 4, 2022

Parties may begin to serve interrogatories:

February 14, 2022

JOINT RULE 26(f) REPORT

Parties may begin to take fact witness depositions:

    July 5, 2022

Parties will serve all document requests:

    June 3, 2022.

Subject to rulings on any objections and/or discovery disputes, the Parties will substantially complete document production:

    November 4, 2022.

Parties may begin to serve interrogatories:

    February 14, 2022.

Parties may begin to take fact witness depositions:

    July 5, 2022

Fact witness depositions will be completed:

    February 3, 2023.

**Expert Discovery**

Expert reports on issues where a party bears the burden of proof:

    March 3, 2023

Responsive expert reports:

    April 7, 2023

Expert depositions:

    May 5, 2023.

Expert discovery closes, and expert reply reports, if any, are due:

    May 19, 2023.

**Class Certification Briefing**

Plaintiffs' motions for class certification:

    June 2, 2023.

Defendants' opposition to Plaintiffs' motions for class certification:

    July 14, 2023.

Plaintiffs' replies in support of class certification:

JOINT RULE 26(f) REPORT

1          August 11, 2023.

2     **Summary Judgment Briefing**

3          Motions for summary judgment:

4               November 13, 2023.

5          Oppositions to motions for summary judgment:

6               January 8, 2024.

7          Replies in support of motions for summary judgment:

8               February 5, 2024.

9          **Discovery Cut-Off Date:**

10              **May 19, 2023.**

11         **Final Motion Cut-Off Date:**

12              **February 19, 2024.**

13         **Final Pretrial Conference:**

14              **April 1, 2024.**

15         **Date for Trial:**

16              **April 9, 2024.**

17

18    DATED:  December 1, 2021          Respectfully submitted,

19

20                                      /s/     *Christopher W. Keegan*

21
                                        Christopher W. Keegan (SBN 232045)
22                                      chris.keegan@kirkland.com
                                        KIRKLAND & ELLIS LLP
23                                      555 California St., Suite 2900
                                        San Francisco, CA 94104
24                                      Telephone: (415) 439-1400
                                        Facsimile: (415) 439-1500
25

26                                      *Counsel for Defendants*
                                        *Amplify Energy Corp., Beta Operating*
27                                      *Company, LLC, and San Pedro Bay Pipeline*
                                        *Company*
28

                                        29          JOINT RULE 26(f) REPORT

1

2          /s/      *Robert Hutchinson*

3          Robert Hutchinson (SBN 45367)
           rhutchinson@cpmlegal.com
4          Gary A. Praglin (SBN 101256)
           gpraglin@cpmlegal.com
5          Kelly Weil (SBN 291398)
           kweil@cpmlegal.com
6          Nanci E. Nishimura (SBN 152621)
           nnishimura@cpmlegal.com
7          Anne Marie Murphy (SBN 202540)
           amurphy@cpmlegal.com
8          Hannah Brown (SBN 337592)
           hbrown@cpmlegal.com
9          COTCHETT, PITRE & McCARTHY, LLP
10         2716 Ocean Park Boulevard, Suite 3088
           Santa Monica, CA 90405
11         Telephone: (310) 392-2008
           Facsimile: (310) 310-0111
12

13         *Counsel for Plaintiffs Banzai Surf Company,*
           *LLC and Bradley Bitton d/b/a Brad's Live Local*
14         *Lobster and Kirk Schoonover*

15

16         /s/      *Richard D. McCune*

17         Richard D. McCune
18         rdm@mccunewright.com
           David C. Wright
19         dcw@mccunewright.com
           James G Perry
20         jgp@mccunewright.com
           McCUNE WRIGHT AREVALO LLP
21         18565 Jamboree Road Suite 550
           Irvine, CA 92612
22         Telephone: (909) 557-1250
           Facsimile: (909) 557-1275
23

24

25

26

27

28

                                    30          JOINT RULE 26(f) REPORT

1
2
3
4
5
6
7

Rick Lloyd Richmond
rrichmond@larsonllp.com
Stephen Gerard Larson
slarson@larsonllp.com
Steven E Bledsoe
sbledsoe@larsonllp.com
LARSON LLP
600 Anton Boulevard Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

8
9

*Counsel for Plaintiff Beyond Business*
*Incorporated, d/b/a Big Fish Bait & Tackle*

10
11

/s/    *Jaimi M. Groothuis*

12
13
14
15
16
17
18

Jaimi M Groothuis
jgroothuis@bentleymore.com
Matthew William Clark
mclark@bentleymore.com
Gregory L. Bentley
gbentley@bentleymore.com
BENTLEY AND MORE, LLP
4 Park Plaza Suite 500
Irvine, CA 92614
Telephone:  (949) 870-3800
Facsimile: (949) 732-6291

19
20

*Counsel for Plaintiffs Charlie's Gyros, Inc. a*
*California corporation*

21
22
23
24
25
26
27
28

31                          JOINT RULE 26(f) REPORT

1

2
/s/    *Lexi J. Hazam*

3
Lexi J Hazam
lhazam@lchb.com

4
Elizabeth Joan Cabraser
ecabraser@lchb.com

5
Robert J Nelson
rnelson@lchb.com

6
Wilson M Dunlavey
wdunlavey@lchb.com

7
LIEFF CABRASER HEIMANN

8
  & BERNSTEIN LLP

9
275 Battery Street 29th Floor
San Francisco, CA 94111-3339

10
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

11

12
Kelly K McNabb

13
kmcnabb@lchb.com
LIEFF CABRASER HEIMANN

14
  & BERNSTEIN LLP

15
250 Hudson Street 8th Floor
New York, NY 10013-1413

16
Telephone:  (212) 355-9500
Facsimile: (212) 355-9592

17

18

19

20

21

22

23

24

25

26

27

28

JOINT RULE 26(f) REPORT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alexander Robertson , IV
arobertson@arobertsonlaw.com
Mary J. Uyeno
muyeno@arobertsonlaw.com
ROBERTSON AND ASSOCIATES LLP
32121 Lindero Canyon Road Suite 200
Westlake Village, CA 91361
Telephone:  (818) 851-3850
Facsimile: (818) 851-3851

*Counsel for Plaintiffs Davey's Locker
Sportfishing, Inc., a California corporation;
Blue Pacific Fisheries, A California
Corporation; Ivar Southern And Linda
Southern, Individuals; Newport Landing
Sportfishing, Inc., a California corporation;
San Pedro Bait Co., a California corporation;
Donald C. Brockman, individually and as
trustee of the Donald C. Brockman Trust and
Heidi M. Jacques, individually and as trustee of
the Heidi M. Brockman Trust; Gregory
Hexberg, individually and as trustee of The
Gregory C. and Deborah L. Hexberg Family
Trust*

/s/     *Darren O. Aitken*
_____

Darren O. Aitken
darren@aitkenlaw.com
Michael Anthony Penn
michael@aitkenlaw.com
Wylie A Aitken
wylie@aitkenlaw.com
Megan Janet Gless Demshki
megan@aitkenlaw.com
AITKEN & COHN
3 MacArthur Place Suite 800
Santa Ana, CA 92707
Telephone:  (714) 434-1424
Facsimile: (714) 434-3600

*Counsel for Plaintiff East Meets West
Excursions*

33                    JOINT RULE 26(f) REPORT

1
2                              /s/    _Jeff S. Westerman_

3                              Anna-Patrice Harris
                               aharris@saverilawfirm.com
4                              Christopher Kar-Lun Young
                               cyoung@saverilawfirm.com
5                              Steven Noel Williams
                               swilliams@saverilawfirm.com
6                              Joseph R Saveri
                               jsaveri@saverilawfirm.com
7                              JOSEPH SAVERI LAW FIRM INC.
8                              601 California Street Suite 1000
                               San Francisco, CA 94108
9                              Telephone: (415) 500-6800
                               Facsimile: (415) 395-9940
10
11
                               Jeff S. Westerman
12                             jwesterman@jswlegal.com
                               Guido E. Toscano
13                             gtoscano@jswlegal.com
                               WESTERMAN LAW CORP.
14                             16133 Ventura Boulevard Suite 685
                               Encino, CA 91436
15                             Telephone: (310) 698-7450
                               Facsimile: (310) 775-9777
16
17
18                             Stuart G Gross
19                             sgross@grosskleinlaw.com
                               GROSS & KLEIN, LLP
20                             The Embarcadero Pier 9, Ste. 100
                               San Francisco, CA 94111
21                             Telephone: (415) 671-4628
                               Facsimile: (415) 480-6688
22
23                             *Counsel for Plaintiffs Ketcham Tackle LLC*

24
25
26
27
28
                                  34        JOINT RULE 26(f) REPORT

1

2          /s/      _Albert Y. Chang_

3          Albert Y Chang
           achang@bottinilaw.com
4          Yury A Kolesnikov
           ykolesnikov@bottinilaw.com
5          Francis A Bottini, Jr
           fbottini@bottinilaw.com
6          BOTTINI & BOTTINI, INC.
7          7817 Ivanhoe Avenue Suite 102
           La Jolla, CA 92037
8          Telephone: (858) 914-2001
           Facsimile: (858) 914-2002
9

10         *Counsel for Plaintiffs Newport Surfrider, LLC*

11         /s/      _Alex R. Straus_

12         Alex R. Straus
           astraus@milberg.com
13         MILBERG COLEMAN BRYSON
14         PHILLIPS GROSSMAN, PLLC
           280 S. Beverley Drive
15         Beverly Hills, CA 90212
           Telephone: (917) 471-1894
16         Facsimile: (310) 496-3176

17

18         Blake Hunter Yagman
           byagman@milberg.com
19         MILBERG COLEMAN BRYSON
           PHILLIPS GROSSMAN, PLLC
20         100 Garden City Plaza, Suite 500
           Garden City, New York 11530
21         Telephone: (212) 594-5300

22         *Counsel for Plaintiff Peter Moses Gutierrez Jr.*

23

24

25

26

27

28

                                35          JOINT RULE 26(f) REPORT

1

2          /s/      _Matthew C. Maclear_

3          Matthew C. Maclear
           mcm@atalawgroup.com
4          Jason R. Flanders
           jrf@atalawgroup.com
5          Erica A. Maharg
           eam@atalawgroup.com
6          J. Thomas Brett
           jtb@atalawgroup.com
7          AQUA TERRA AERIS LAW GROUP
8          4030 Martin Luther King Jr. Way
           Oakland, CA 94609
9          Telephone: (415) 568-5200

10

11         Paul A. Matiasic
           matiasic@mjlawoffice.com
12         THE MATIASIC FIRM, P.C.
           355 S. Grand Ave., Ste. 2450
13         Los Angeles, CA 90071
           Telephone: (213) 699-2083
14

15         *Counsel for Plaintiffs Quality Sea Food, Inc., a*
           *California Corporation; Jack Buttler, an*
16         *individual; LBC Seafood, Inc., a California*
           *Corporation; and Steve Legere, an individual*
17
           /s/      _Cynthia L. Garber_
18

19         Cynthia L. Garber
           garber@onderlaw.com
20         Jessica Grau
           grau@onderlaw.com
21         ONDERLAW, LLC
           12 Corporate Plaza Drive, Suite 275
22         Newport Beach, CA 92660
           Telephone: (949) 688-1799
23         Facsimile: (314) 963-1700

24
           *Counsel for Plaintiff Hill's Boat Service, Inc.*
25

26

27

28

                                 36          JOINT RULE 26(f) REPORT

1

2      /s/     *Lawrence J. Conlan*

3      Lawrence J Conlan
       lconlan@cappellonoel.com
4      Leila J Noel
       lnoel@cappellonoel.com
5      A Barry Cappello
       abc@cappellonoel.com
6      Capello and Noel LLP
       831 State Street
7      Santa Barbara, CA 93101-3227
       Telephone: (805) 564-2444
8      Facsimile: (805) 965-5950

9
       *Counsel for Plaintiffs Stephen E. Samuelian*
10     *and Kristin Kay Samuelian, as Trustees of the*
       *Kristin and Stephen Samuelian Family Trust*
11     *established 8/25/2017, and SK5-Keller Legacy,*
       *LLC, a Utah LLC*
12

13

14     /s/     *David Seabold Casey, Jr.*

15     David Seabold Casey, Jr
       dcasey@cglaw.com
16     Frederick Schenk
       fschenk@cglaw.com
17     Gayle M Blatt
       gmb@cglaw.com
18     Samantha Kaplan
       skaplan@cglaw.com
19     CASEY GERRY SCHENK FRANCAVILLA
20        BLATT & PENFIELD LLP
       110 Laurel Street
21     San Diego, CA 92101
       Telephone: (619) 238-1811
22     Facsimile: (619) 544-9232

23
       Stephen J. Herman
24     sherman@hhklawfirm.com
       HERMAN KATZ, LLC
25     820 O'Keefe Avenue
       New Orleans, LA 70113
26     Telephone: (504) 581-4892

27
       *Counsel for Plaintiff James Whelan*
28

37                    JOINT RULE 26(f) REPORT

1

2                       /s/      *Joel B. Young*

3                       Joel B. Young

4                       jby@tidricklaw.com
                         Steven G. Tidrick

5                       sgt@tidricklaw.com
                         THE TIDRICK LAW FIRM LLP

6                       1300 Clay Street, Suite 600
                         Oakland, CA 94612

7                       Telephone: (510) 788-5100
                         Facsimile: (510) 291-3226

8

9                       Brittany Armstrong Whittington
                         brittany@whittingtonlawfirmca.com

10                    WHITTINGTON LAW FIRM
                         100 Admiral Callaghan Lane #5482

11                    Vallejo, CA 94591
                         Telephone: (833) 944-8529

12

13                    Mikael A. Abye
                         mick@abyelaw.com

14                    ABYE LAW OFFICES
                         88 Kearney Street, Suite 1850

15                    San Francisco, CA  94108
                         Telephone: (415) 341-4519

16

17                    *Counsel for Plaintiff N.S.T., a minor, by and*
                         *through her Guardian Ad Litem,*

18                    *MICHAELANGELO SAINT THOMAS*

19

20

21

22

23

24

25

26

27

28

# **SIGNATURE CERTIFICATION**

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.


DATED:  December 1, 2021

*s/ Christopher W. Keegan*
Christopher W. Keegan

JOINT RULE 26(f) REPORT